[No. 1679.]

### WILLIAM TAYLOR *v.* THE STATE.

1. PRACTICE — EVIDENCE.— It is the exclusive province of the jury trying the case to pass upon the weight of the evidence and the credibility of the witnesses.

2. ASSAULT TO MURDER — MANSLAUGHTER — CHARGE OF THE COURT.— It would be error in a trial court to charge upon a hypothetical state of case not presented by the evidence. Note facts in a prosecution for assault with intent to murder, *held* not to demand a charge upon the law of manslaughter or aggravated assault.

3. SAME — FACT CASE.— See evidence *held* sufficient to sustain a conviction for assault with intent to murder.

APPEAL from the Criminal District Court of Harris. Tried below before the Hon. Gustave Cook.

The appellant was convicted of an assault with intent to murder one George Davis, in Harris county, Texas, on the 19th day of December, 1883. He was awarded a term of two years in the penitentiary as punishment.

George Davis was the first witness for the State. He testified that, about midnight on the night of December 19, 1883, he was awakened by some one calling his name. He called out: "Who is that?" He then asked: "Is that you, Taylor?" Defendant answered: "Yes." The witness then invited him to come in and spend the night. He declined. Defendant had built a fire in front of, and about ten feet from, the door of the witness's cabin. Witness got up and went out to the fire in his night clothes, and soon discovered that the defendant was cross. Witness asked him: "What is the matter?" He replied: "You have got to give me up that contract and quit cutting wood." To this the witness replied: "I have not the contract with me. We will go to town in the morning and settle the matter." Defendant said: "No, by G—d, I am going to have the contract to-night; you have it; a man told me you read it to him." Witness then said to him: "The contract is mine. You and your wife signed it; I have been cutting the wood under it, and have the right to cut the wood, and I will not give you the contract." The witness, suspecting nothing, was then knocked down by the defendant. He got up, ran into the cabin and closed the door. Defendant followed and called to witness to come out and surrender the contract, threatening, should the witness refuse, to break the door in with an ax, burn up the cabin and shoot the witness.

The witness, apprehending further danger, took his gun from the rack, inserted a cartridge, and, stepping out of the cabin, said to the defendant: "Taylor, I have asked you to go off and let me alone; now go!" Witness saw that the defendant had his gun leveled on him, and in consequence raised his gun. Witness and the defendant fired nearly or quite at the same instant of time. Though not certain, the witness thought that the defendant fired a little first. Witness was satisfied that he would have been killed had he not fired as soon as he did. Defendant fired twice at the witness. The witness fired but once. Both loads fired by the defendant struck the cabin about a foot distant from the witness. Witness did not know whether or not any of his shot struck the defendant, though he had been told that a buckshot passed through the defendant's hat. At the time of the shooting the witness stood in the shadow and the defendant in the light. Both guns were loaded with buckshot. Witness, after the shooting, ran behind a wood pile and looked out for the defendant, but saw no more of him. This all happened in Harris county, Texas.

The witness, whose business was cutting wood, lived, at the time

of the shooting, in the woods. He was cutting wood then, under a contract with the defendant and his wife. The contract was here read in evidence. It is as follows:

"Green's Bayou, Harris Co., April 26, 1883.

"This is to certify that we have this day sold to Geo. C. Davis all of our timber on the John Thornton league, containing one hundred acres, as follows: Oak at thirty-five cents per cord; pine at twenty-five cents per cord; the wood to be measured and paid for on railroad track.

(Signed)                          "W. P. Taylor,
                                   "M. E. Taylor."

The witness had built a commissary and a small house to live and sleep in. It was about midnight when the defendant first called the witness. Witness had not seen the defendant, who with his wife lived at Beaumont, for about two months. Witness did not see the defendant when he got his gun, and did not know where he had it during the first conversation. Defendant had the witness covered with his gun when the witness first observed the weapon. Witness immediately fired, the defendant firing at the same time, and shooting once afterwards. The shooting was done at a distance of ten or twelve feet, the witness standing at the door of his cabin.

On cross-examination the witness stated that, prior to this difficulty, he and the defendant had had no words about the contract. The witness had not promised defendant to suspend wood cutting on his land. Defendant once asked the witness to cut the trees clean as he went. Witness told him that he would go over the land and cut all the wood up. Defendant said, "all right." In cutting felled timber some of the trees will inevitably be left. Witness stopped cutting on defendant's land once, to cut some better timber that he had bought from Mr. Oats, and when through, he returned to finish on defendant's land. Witness at no time told the defendant that he would burn the contract. He at no time told Ed. Gay that he shot first, and he had never talked to Cathron about the matter.

Gilford Moore testified, for the State, that he was working for Davis at the time of the shooting. He did not see the first of the difficulty. The first he saw of it Davis was running to his cabin. Defendant followed to the door, cursed Davis, demanded the contract, threatened to break in, burn the cabin and kill Davis. Witness saw defendant go to a wood pile while Davis was in the house. He had a gun in his right hand, and with his left attempted to dislodge a stick of wood. Davis came out of the cabin with his gun

in his hand, and said to defendant: "I have asked you to go off and leave me alone; now get." Defendant dropped the stick of wood and raised his gun. He and Davis fired about the same time. Defendant fired again, and then Davis ran behind the wood pile. Witness saw no more of the defendant. The State closed.

Edmond Gay testified, for the defense, that he was working for Davis at the time of the shooting. Witness asked Davis why he ran. Davis replied that he did not care about running, but was not going to let any one get the advantage of him. He said also that he fired the first shot.

James Cathron testified, for the defense, that Davis told him that he fired the first shot. Witness had heard him say that he would shoot any man who attempted to interfere with his cutting wood.

The correctness of the charge of the court and the sufficiency of the evidence were assailed in the motion for new trial.

*T. E. Conn* and *W. T. Cumming*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

Willson, Judge. This court cannot pass upon the *weight* of the evidence or the *credibility* of the witnesses. It is the exclusive province of the jury that tries the case to perform such duty. (Code Crim. Proc., art. 723.) In this case there is ample evidence, if believed, to not only warrant, but to demand, the conviction of the defendant of an assault with intent to murder. By their verdict the jury have said that they believed this evidence to be true, and it is not within the province of this court to disturb that finding. It was proved that the defendant went to the house of Davis, in the night-time, called Davis out of his bed, assaulted and knocked him down, without any provocation; and, when Davis had fled into his house for safety, threatened to break the door of the house, or burn the house and kill him. Armed with a gun, he was preparing to break into the house when Davis appeared at the door of the house, also armed with a gun, and both parties fired at each other about the same instant. Defendant fired at Davis twice. It was also proved that defendant entertained malice toward Davis, growing out of a misunderstanding about a contract between them. To our minds this evidence establishes clearly an assault with intent to murder.

There was no evidence in the case which, in our opinion, demanded or would have warranted the court in charging upon the law of manslaughter. The acts of the defendant evince deliber-

·ation throughout the difficulty, and the circumstances show that he was actuated by malice and a formed design to take the life of Davis.

There was no "sudden passion" "arising from an adequate cause," and it was not incumbent upon the court to instruct the jury upon a hypothetical state of case not presented by the evidence. It would have been error for the court to have done so. (*Anderson* v. *The State*, 15 Texas Ct. App., 447.) We think the charge of the court was in all respects correct, and applicable to the facts proved.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

[Opinion delivered October 22, 1884.]